BRUCE A. HARLAND, Bar No. 230477
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone  (510) 337-1001
Fax  (510) 337-1023
E-Mail:  bharland@unioncounsel.net

Attorneys for Defendant SEIU UNITED HEALTHCARE WORKERS-WEST

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO  DIVISION

| | |
|---|---|
| GREG PRICE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SEIU UNITED HEALTHCARE WORKERS-WEST, and DOES 1 through 10,<br><br>        Defendants. | No. 1:20-CV-00385-AWI-SKO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:       May 4, 2020<br>Time:       1:30 p.m.<br>Judge:      Hon. Anthony W. Ishii<br>Courtroom:  2<br>Address:    Robert E. Coyle United States Courthouse<br>            2500 Tulare Street, 8th Floor<br>            Fresno, CA 93721 |

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS .....................................................................................................2

III. LEGAL STANDARD .............................................................................................................3

IV. LEGAL ARGUMENT ............................................................................................................4

    A. PLAINTIFF DOES NOT ALLEGE SUFFICIENT FACTS TO SUPPORT HIS FIRST, SECOND, OR THIRD CAUSES OF ACTION ........................................................................................................................4

    B. PLAINTIFF'S FIRST CAUSE OF ACTION, FOR VIOLATION OF THE EFTA, FAILS AS A MATTER OF LAW BECAUSE THE UNION IS NOT A FINANCIAL INSTITUTION ........................................................................................6

        1. The subject of Plaintiff's Complaint is an "unauthorized" transaction, not an ongoing "preauthorized" transaction, and the EFTA provisions dealing with "unauthorized" transactions apply only to financial institutions. .....................................................................7

        2. Alternatively, even if the subject of Plaintiff's Complaint is considered to be a continuing preauthorized transaction and not a new unauthorized transaction, Plaintiff is actually alleging a violation of the "stop payment" provisions of Section 907 of the EFTA, which applies only to financial institutions. ...............................11

V. CONCLUSION .....................................................................................................................14

i

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 3

*Baldukas v. B&R Check Holders, Inc.*,
    No. 12-CV-01330-CMA-BNB, 2012 U.S. Dist. LEXIS 186777, 2012 WL
    7681733 (D. Colo. Oct. 1, 2012) .................................................................................. 12, 13

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1988) ............................................................................................... 3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 3

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County
    of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) .................................................................. 3

*Herman v. SeaWorld Parks & Entertainment, Inc.*,
    2017 U.S. Dist. LEXIS 58065 (M.D. Fla. Apr. 17, 2017) ............................................ 10, 11

*Miller v. Interstate Auto Grp., Inc.*,
    No. 14-cv-116-slc, 2015 U.S. Dist. LEXIS 51993 (W.D. Wis. Apr. 21 2015) ............. 7, 12

*Nordberg v. Trilegiant Corp.*,
    445 F.Supp.2d 1082 (N.D. Cal. 2006) .............................................................................. 13

*Price v. Synapse Grp., Inc.*,
    No. 16-cv-01524-BAS-BLM, 2017 U.S. Dist. LEXIS 115363 (S.D.Cal. Jul.
    24, 2017) ............................................................................................................................. 5

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ............................................................................................... 3

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ............................................................................................... 3

**Federal Statutes**

15 U.S.C. 1693, et seq. (Electronic Funds Transfer Act, "FETA") ....................................... *passim*

15 U.S.C. § 1693(b) ..................................................................................................................... 6

15 U.S.C. § 1693a(7) .................................................................................................................... 7

15 U.S.C. § 1693a(9) .................................................................................................................... 8

15 U.S.C. § 1693a(10) .................................................................................................................. 7

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

**TABLE OF AUTHORITIES (cont'd)**

**Page**

15 U.S.C. § 1693a(12) ..................................................................................................................7

15 U.S.C. § 1693e(a)..............................................................................................................*passim*

15 U.S.C. § 1693h.......................................................................................................................13

15 U.S.C. § 1693h(a)(3)..............................................................................................................13

15 U.S.C. § 1693m...............................................................................................................12, 13

EFTA § 1693(g).........................................................................................................................10

**State Statutes**

Cal. Bus. & Prof. Code § 17200, et seq. (Unfair Competition Law)............................................1, 6

Cal. Bus. & Prof. Code § 17600, et seq. ......................................................................................5

Cal. Bus. & Prof. Code § 17601(b)(3) .........................................................................................5

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................................................3, 14

**Regulations**

12 C.F.R. 1005.10(b) ..................................................................................................................8

12 C.F.R. § 1005.1 *et seq.*...........................................................................................................7

12 C.F.R. § 1005.3(a)................................................................................................... 7, 8, 10, 12

12 C.F.R. § 1005.3(b)(2)..............................................................................................................8

12 C.F.R. § 1005.3(b)(3)..............................................................................................................8

12 C.F.R. § 1005.10(b) ................................................................................................................8

12 C.F.R. § 1005.10(d)-(e)..........................................................................................................8

12 C.F.R. § 1005.13 ....................................................................................................................8

**Other Authorities**

Donald I. Baker, et al., The Law of Electronic Fund Transfer Systems (LexisNexis
    2019).§ 17.02, n.77.4 ............................................................................................................10

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

## I. INTRODUCTION

Plaintiff Greg Price ("Plaintiff"), a former Union organizer, has filed a complaint against his former employer, Service Employees International Union, United Healthcare Workers-West ("SEIU-UHW" or "Union"), alleging that the Union (1) violated certain provisions of the Electronic Funds Transfer Act ("EFTA"), (2) violated the California Automatic Purchase Renewal Statute ("CAPRS"), and (3) violated Section 17200 of California's Business and Professions Code (Unfair Competition Law, or "UCL"). Plaintiff brings these allegations on behalf of himself and others similarly situated, as a member of two proposed classes: the EFTA class and the CAPRS class.

SEIU-UHW is a voluntary association that represents the interests of healthcare workers and patients. The Union collects contributions, in the form of membership dues, from its members. It does not sell any products or services. While employed by the Union, Plaintiff's job was to recruit members of the community and sign them up as associate Union members. Among the many community members that Plaintiff recruited during his employment at the Union were his daughter and son. Plaintiff signed up his daughter and son for associate memberships using his own back account to pay for their monthly dues. Plaintiff now claims that upon his separation from the Union in September 2018, he asked the Union to stop automatically withdrawing his son's dues from his account. Plaintiff does not allege that he asked the Union to stop automatically withdrawing his daughter's dues from his account.

On or about April 15, 2019, Plaintiff claims that the Union debited forty ($40) dollars from his bank account without his consent. However, it is unclear from Plaintiff's Complaint whether the amounts debited from his account in April 2019 are associated with his son's membership dues, someone else's membership dues, or were the result of an accounting error. Following the April 2019 charges, Plaintiff never contacted the Union in an effort to resolve the issue. Instead, nearly a year after the Union debited Plaintiff's bank account, Plaintiff filed the instant action.

Plaintiff's Complaint should be dismissed because it does not allege sufficient facts to support his first, second, or third causes of action. Moreover, Plaintiff's first cause of action, for

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

1

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

violations of the EFTA, should be dismissed as a matter of law, because the allegations in Plaintiff's complaint would be proper only against a financial institution, which the Union is not. Thus, the Union respectfully requests that the Court dismiss Plaintiff's lawsuit under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

## II.     STATEMENT OF FACTS

Plaintiff is a former employee of SEIU-UHW.  Plaintiff's Complaint ["Compl."] at ¶ 10. He began working for SEIU-UHW in 2009, in the Union's Fresno, California office.  Compl. at ¶ 10.  During Plaintiff's tenure at SEIU-UHW, he registered his son and daughter as "associate members" of the Union.  Compl. at ¶ 11.  Plaintiff used his bank account to pay the monthly dues for his son's and daughter's memberships, which amounted to twenty ($20) dollars per month per member.  Compl. ¶¶ at 12-13.  He paid these dues via the Union's Pledge-Up service, an electronic payment platform.  Compl. at ¶ 13.  When members elect to pay their dues using this platform, the Union automatically debits their bank account on a recurring basis.  Compl. at ¶ 13.

In September 2018, Plaintiff's employment with the Union ended, and he claims that he asked the Union to cancel his son's membership.  Compl. at ¶ 14.  According to Plaintiff, the Union temporarily ceased debiting Plaintiff's bank account for his son's dues.  Compl. at ¶ 15. However, on April 15, 2019, Plaintiff alleges that the Union resumed these monthly charges. Compl. at ¶ 16.  It is not clear from the Complaint whether the Union debited Plaintiff for his son's membership, for the membership of someone else, or by mistake.  Plaintiff claims that the Union billed him "twice," for a total of forty ($40) dollars.  Compl. at ¶¶ 18-19.  According to Plaintiff, the Union "did not provide explicit notice" before resuming the charges, nor did the Union "obtain[] written permission" or "notify Plaintiff in any manner."  Compl. at ¶¶ 16-17. The charges "caus[ed] Plaintiff to incur overdraft fees."  Compl. at ¶ 19.

Plaintiff alleges that "the material circumstances surrounding this experience by Plaintiff were the same, or nearly the same, as the other class members Plaintiff proposes to represent." Compl. at ¶ 32.  He further claims that "all putative class members were required to pay, and did pay, money for services marketed and sold" by the Union, although Plaintiff does not explain what the "services" are that class members pay for.  Compl. at ¶ 32.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

2

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

1   Nearly a year after Plaintiff's account was debited, on January 14, 2020, Plaintiff — on
2   behalf of himself and others similarly situated — filed an action against the Union for violations
3   of the EFTA, CAPRS, and the UCL in the California Superior Court for the County of Fresno.
4   On March 13, 2020, the Union removed the instant matter to the Eastern District of California,
5   Fresno Division.

### III.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper where there is a total "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In order to survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's factual allegations must add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint can survive a Rule 12(b)(6) motion, the court must accept a plaintiff's well-pled factual allegations as true and construe them in the light most favorable to the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). In addition to the complaint, the court may consider documents referenced by the complaint and accepted by all parties as authentic. *See*, *e.g.*, *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).

Rule 12(b)(6) does not require the court to accept as true legal conclusions dressed up as factual allegations. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (noting that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

3
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

Given this standard, Plaintiff has failed to establish sufficient factual allegations to sustain his actions under any existing legal theory and has failed to state a cognizable legal theory upon which to bring his action.

## IV. LEGAL ARGUMENT

Plaintiff's claims against the Union should be dismissed for two reasons. First, none of his three causes of action, for violations of the EFTA, the CAPRS, and the UCL, respectively, are pled with sufficient specificity. Second, Plaintiff's first cause of action, for violation of the EFTA, is defective as a matter of law, because the Union is not a financial institution.

### A. PLAINTIFF DOES NOT ALLEGE SUFFICIENT FACTS TO SUPPORT HIS FIRST, SECOND, OR THIRD CAUSES OF ACTION

Plaintiff's first cause of action alleges a violation of EFTA Section 1693e(a), which provides that "[a] preauthorized electronic fund transfer … may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Plaintiff does not assert that the Union failed to meet these requirements when Plaintiff initially registered his son and daughter as members. He instead claims that after he canceled his son's membership, the Union resumed billing him without first obtaining written authorization, and without providing him with a copy of such authorization. Compl. at ¶¶ 16-17. This is a conclusory allegation without specific supporting facts.

Plaintiff claims that he cancelled his son's membership, but never mentions cancelling his daughter's membership. Compl. at ¶ 14. A logical assumption from this omission is that Plaintiff was still paying his daughter's monthly dues, even after his employment with the Union ended in September 2018. Plaintiff alleges no specific facts showing that the April 2019 charges represented his son's dues. He only notes that the charges were labeled as "PLEDGEUP DUES & PAC." Compl. at ¶¶ 16, 18. This does not indicate whether the charges represented Plaintiff's son's monthly dues, as Plaintiff seems to suggest without specifically alleging, or another monthly charge, such as his daughter's dues. Without additional specific facts demonstrating that the April 2019 charges actually represented his son's dues, Plaintiff cannot show that the Union acted unlawfully, and his EFTA claim must be dismissed.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

4

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

Plaintiff brings his second cause of action under CAPRS. Cal. Bus. & Prof. Code § 17600, et seq. This claim lacks specificity. Plaintiff references the CAPRS statute in its entirety, but fails to indicate which provisions of the law the Union has violated. Compl. at ¶¶ 54-59. Moreover, Plaintiff does not allege sufficient facts to support his CAPRS allegations. He claims that the Union failed to "clearly and conspicuously give notice of a material change in the terms of the automatic renewal or continuous service offer." Compl. at ¶ 56. However, he never identifies these "material changes." The only "term" of the agreement between Plaintiff and the Union that Plaintiff mentions is the price — twenty ($20) dollars per month. Compl. ¶¶ at 12-13. Plaintiff never alleges that this term "changed." When the Union resumed billing Plaintiff in April 2019, Plaintiff incurred two of these twenty-dollar charges for a total of forty ($40) dollars. Compl. at ¶¶ 18-19. The cost of an associate membership with the Union remained twenty ($20) dollars per month. Plaintiff fails to mention any other "terms" of the agreement, what those terms were initially, or how exactly they "changed" without his consent.

Under CAPRS, the automatic renewal offer terms that must be disclosed in a clear and conspicuous manner include "[t]he recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan." Cal. Bus. & Prof. Code § 17601(b)(3). Again, all that can be gleaned from Plaintiff's complaint regarding such terms is the price of a membership, which never changed. In *Price v. Synapse Grp., Inc.*,[1] a federal district court dismissed a CAPRS cause of action for lack of specificity where the plaintiff "d[id] not allege the terms of the automatic renewal offer originally accepted by Plaintiffs, nor how the rate charged for the renewed subscriptions reflects a 'material change' from the original terms." The Court found that the plaintiff's proffered support for its CAPRS allegation "amount[ed] to little more than a recitation of the elements of the relevant claim, rather than factual content to support the claim." *Price*, 2017 U.S. Dist. LEXIS 115363 at *21. The same is true here. Plaintiff's Complaint consists of nothing more than a conclusory allegation that the Union violated CAPRS by failing to give notice of a "material change," without

---

[1] No. 16-cv-01524-BAS-BLM, 2017 U.S. Dist. LEXIS 115363 at *21-22 (S.D.Cal. Jul. 24, 2017).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

5
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

identifying the change. Absent additional facts, Plaintiff's material change theory under CAPRS must be dismissed.

One of Plaintiff's CAPRS theories is also contradictory. Plaintiff claims that the Union failed "to provide an acknowledgment that includes the … cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Compl. at ¶ 56. However, earlier in the Complaint, Plaintiff claims that he cancelled his son's associate membership in September 2018, and that billing for this membership ceased for six months. Compl. at ¶¶ 14-15. The only reason these charges would cease is if the Union received and acted on this request. It makes little sense that Plaintiff could successfully cancel his son's membership, and then allege that the Union failed to provide any information explaining how to request cancellation. Absent additional facts that would reconcile this apparent contradiction, Plaintiff's cancellation policy theory must also be dismissed.

Similar defects are apparent in Plaintiff's third cause of action, for violation of the UCL. Cal. Bus. & Prof. Code § 17200, et seq. Once again, Plaintiff references the UCL statute in its entirety without identifying which specific provisions of the law the Union has violated. Compl. at ¶¶ 60-77. Furthermore, in alleging that the Union's actions were "fraudulent," Plaintiff claims that the Union's deception "is evidenced by the fact that Defendant had a duty to disclose material changes to its automatic renewal agreements." Compl. at ¶ 70. Again, Plaintiff does not identify these material changes. The only term in Plaintiff's automatic renewal agreement that he mentions is the price term, which — as previously discussed — never changed. Without specific facts explaining the terms of the agreement, Plaintiff cannot meet the "fraudulent" prong of the UCL, and this cause of action must be dismissed.

**B.     PLAINTIFF'S FIRST CAUSE OF ACTION, FOR VIOLATION OF THE EFTA, FAILS AS A MATTER OF LAW BECAUSE THE UNION IS NOT A FINANCIAL INSTITUTION**

Congress enacted the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The primary objective of the EFTA is "to provide individual consumer rights." In the instant case, Plaintiff specifically relies on 15 U.S.C. § 1693e(a), which protects

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

6

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

consumers who engage in "preauthorized electronic fund transfers." For the reasons stated below, Plaintiff's reliance on Section 1693e(a) is misplaced, and his first cause of action must fail.

> **1. The subject of Plaintiff's Complaint is an "unauthorized" transaction, not an ongoing "preauthorized" transaction, and the EFTA provisions dealing with "unauthorized" transactions apply only to financial institutions.**

The EFTA defines an "electronic fund transfer" (or "EFT") as

> any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7).

A "preauthorized" EFT is "an [EFT] authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). By contrast, an "unauthorized" EFT is defined as

> an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved the transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution. 15 U.S.C. § 1693a(12).

All of the EFTA's requirements apply to "financial institutions." 12 C.F.R. § 1005.3(a).[2] However, only certain provisions of the statute apply to "any person." *Id*. ("Generally, this part applies to financial institutions. For purposes of §§ 1005.3(b)(2) and (3), 1005.10(b), (d), and (e), 1005.13, and 1005.20, this part applies to any person."); *see also Miller v. Interstate Auto Grp., Inc.*, No. 14-cv-116-slc, 2015 U.S. Dist. LEXIS 51993, at *8-10 (W.D. Wis. Apr. 21 2015) (discussing application of EFTA to non-financial institutions). The EFTA defines "financial institution" as a "State or National bank, a State or Federal savings and loan association, a mutual

---

[2] The EFTA's implementing regulation, "Regulation E," is codified at 12 C.F.R. § 1005.1 *et seq*.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

7

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).

Here, Plaintiff does not allege that the Union is a financial institution under the EFTA. Thus, to survive a motion to dismiss, Plaintiff must allege that the Union violated one of the EFTA provisions referenced in 12 C.F.R. § 1005.3(a), as cited above. Plaintiff does not allege any facts demonstrating a violation of or relating to 12 C.F.R. §§ 1005.3(b)(2) and (3), 1005.10(d)-(e), 1005.13, or 1005.20. This leaves only Section 1005.10(b), which states that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. 1005.10(b). This language directly corresponds to the preauthorized transfer provision of EFTA Section 1693e(a) ("A preauthorized [EFT] … may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."). Plaintiff claims that the Union violated this provision of Section 1693e(a) when it (1) failed to obtain written authorization from Plaintiff before making a "preauthorized" EFT from his bank account, and (2) failed to provide Plaintiff with a copy of such written authorization, in violation of Section 1693e(a). Compl. at ¶¶ 52-53.

The Union does not dispute that the preauthorized transfer provision of Section 1693e(a) applies to "any person." The defect in Plaintiff's complaint is that he fails to allege specific facts showing that any "preauthorized" EFT took place. According to Section 1693e(a), "[a] preauthorized [EFT] … may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." At no point does Plaintiff allege that the Union failed to meet these two requirements — obtaining written authorization and providing a copy of that authorization — when Plaintiff initially signed up his daughter and son for an associate membership and registered for automatic payments. The reason that the Complaint is devoid of this allegation is because Plaintiff cannot make such an allegation. Plaintiff's job at the Union was to sign up members and obtain their written authorization for dues deductions; and since he registered his daughter and son using his bank account, he would have

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

8

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

had access to the authorizations related to his daughter's and son's memberships. Instead, Plaintiff bases his EFTA claims on the Union's failure to meet these requirements in between the date he cancelled his son's membership, in September 2018, and April 15, 2019, when the Union "resumed" billing Plaintiff for this membership without "clear and conspicuous notice." Compl. at ¶¶ 16-17.

According to the Complaint, "Plaintiff never provided Defendant with any authorization" to charge his bank account in April 2019. Compl. at ¶ 21 (emphasis added). While Plaintiff may have authorized the Union to bill his account when he initially signed up his son for an associate membership, that authorization ceased to exist when Plaintiff canceled that membership in September 2018. Plaintiff is not merely alleging that the Union failed to obtain written authorization for the April 2019 charges, or that the written authorization was insufficient, or that the Union did not provide Plaintiff with a copy of such written authorization. He is alleging that the Union did not obtain any authorization for the charges, written or otherwise. Thus, what Plaintiff describes in his Complaint is not a "preauthorized" EFT, but an "unauthorized" EFT. Once Plaintiff rescinded his initial authorization for his son's membership dues, the Union had no actual authority to initiate transfers from Plaintiff's bank account, and any ensuing charges no longer fall under the definition of a "preauthorized" EFT.

The statutory definition of an "unauthorized" EFT supports this interpretation. "The term does not include any electronic fund transfer … initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer." *Id*. This exclusion appears relevant here — Plaintiff furnished the Union with access to his bank account when he initially signed up his son for an associate membership. However, the exclusion applies "unless the consumer has notified the financial institution involved the transfers by such other person are no longer authorized." *Id*. (emphasis added). This is exactly what happened in the instant case, as alleged by Plaintiff; according to the Complaint, Plaintiff canceled his son's membership and revoked his scheduled payments. The Union then stopped billing him for a period of six months, only to charge his bank account again six months

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

9
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

later. So despite the Union having access to Plaintiff's account information based on previous transactions, the April 2019 charges were still "unauthorized," not "preauthorized."

Section 1693g of the EFTA focuses on "unauthorized" transactions and the allocation of liability for such transactions. Section 1693g is not one of the provisions referenced in 12 C.F.R. § 1005.3(a) as applying to both "financial institutions" and "any person." Therefore, assuming an "unauthorized" transaction occurred, the Union would not be a proper defendant, and Plaintiff would have to find another statutory avenue for his claim.

Case law on this particular issue is limited. *Herman v. SeaWorld Parks & Entertainment, Inc.*[3] involved an annual theme park membership which required the plaintiff to make monthly payments for twelve months, or until the value of an annual membership was paid off, whichever came first. *Herman*, 2017 U.S. Dist. LEXIS 58065, at *2-3. Because the plaintiff made two payments within the first month, he paid the value of the annual membership in only eleven months. *Id*. The defendant still charged plaintiff for the twelfth month, however, and the plaintiff sued under the EFTA. *Id*. The defendant countered that it should not be held liable under Section 1693e(a), because the twelfth charge was "unauthorized," not "preauthorized." The court dismissed this argument, noting that the defendant provided no support for this bare assertion, and found that the charge was both "preauthorized" and "unauthorized." *Id*. at *16.

Academics have contemplated disputes over whether an EFT is "preauthorized" or "unauthorized," specifically in relation to the *Herman* case. According to one treatise,

> In finding that … Section 907(a) [1693e(a)] covered the unauthorized recurring EFTs, the Court had to view them as a continuation of the series of recurring payments authorized by the consumer. Otherwise, they would not be "authorized," would [not] fall within the definition of "preauthorized EFTs," and, consequently, would not fit within § 907.[4]

The authors explore the issue further:

> Consider, in contrast, a situation in which a party, without any prior authorization, sets up recurring EFTs for a consumer. Having no authorization, the recurring EFTs would not fit within § 907 but, as

---

[3] 2017 U.S. Dist. LEXIS 58065, at *15-16 (M.D. Fla. Apr. 17, 2017).

[4] Donald I. Baker, et al., The Law of Electronic Fund Transfer Systems § 17.02, n.77.4 (LexisNexis 2019).

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

10
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

> SeaWorld may have been trying to argue, would be "unauthorized EFTs," in which case the consumer would need to find another source for the cause of action, perhaps contract law, UDAAP law, or § 909 [EFTA Section 1693(g)], although § 909 would present challenges unless the party were a "financial institution" within the meaning of the EFT Act.[5]

The facts of the instant case differ from those in *Herman*, but are similar to the scenario painted by the authors above. Here, Plaintiff requested that the Union stop charging him for his son's membership, and the Union complied. Six months passed without any charge. Then, as Plaintiff alleges, the Union made a discrete, wholly unauthorized charge to his account.

In *Herman*, on the other hand, the twelfth charge occurred just a month after the previous authorized charge, and before the plaintiff requested that the charges stop. Moreover, the *Herman* court had to examine the annual membership contract, which served as the authorization for the prior eleven charges, to determine whether the twelfth charge was permissible. Thus, the twelfth charge was clearly still related, in some way, to the ongoing EFTs that came before. In the instant case, the same is not true for two reasons: (1) because of the long duration between Plaintiff's September 2018 cancellation and the April 2019 charge; and (2) because the terms of Plaintiff's initial authorization for ongoing EFTs related to his son's membership have no bearing on whether the April 2019 charge was proper. As such, Plaintiff does not state a legally cognizable claim under the EFTA.

> **2. Alternatively, even if the subject of Plaintiff's Complaint is considered to be a continuing preauthorized transaction and not a new unauthorized transaction, Plaintiff is actually alleging a violation of the "stop payment" provisions of Section 907 of the EFTA, which applies only to financial institutions.**

Section 1693e(a) contains two separate provisions. The first states that "[a] preauthorized [EFT] … may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." This is the "preauthorized transfer" provision. Section 1693e(a) next states that "[a] consumer may stop payment of a preauthorized [EFT] by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." This is known as the "stop payment" provision.

---

[5] *Id.*

11
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

Assuming, without conceding, that the April 2019 charges referenced in Plaintiff's complaint are part of an ongoing "preauthorized" transaction, and are not a discrete "unauthorized" transaction, Plaintiff's first cause of action should still be dismissed. Again, Plaintiff does not allege that the Union failed to meet the requirements of the preauthorized transfer provision of Section 1693e(a) when Plaintiff initially signed up his son for a membership. The Complaint is devoid of any facts indicating that the Union failed to obtain proper written authorization, or failed to provide Plaintiff with a copy of such authorization when Plaintiff first signed up for this membership. Plaintiff cannot credibly allege such facts, since he was the Union employee who signed up his daughter and son, using his own bank account to pay for their membership dues, which means he would have had a copy of the authorization. Plaintiff instead alleges that after he canceled his son's membership, the Union failed to abide by his request, and resumed billing him. Thus, while Plaintiff cites the preauthorized transaction provision of Section 1693e(a), he is actually relying on the "stop payment" provision, which, according to 12 C.F.R. § 1005.3(a), does not apply to "all persons," only financial institutions.

Several federal courts have affirmed the principle that only one part of Section 1693e(a) — the preauthorized transaction provision, not the stop payment provision — applies to "all persons." *See*, *e.g.*, *Miller*, 2015 U.S. Dist. LEXIS 51993, at *9-10 ("[Section] 1693h(a)(3) … limits liability to financial institutions for violations of the stop payment provisions concerning preauthorized transfers."); *Baldukas v. B&R Check Holders, Inc.*, No. 12-CV-01330-CMA-BNB, 2012 U.S. Dist. LEXIS 186777, 2012 WL 7681733, at *5 (D. Colo. Oct. 1, 2012) ("The EFTA's stop payment provisions apply only to 'financial institutions' and not to third-party payees like Defendant."). In *Miller*, the plaintiff alleged that defendant auto seller violated the stop payment provision of Section 1693e(a) by requiring five days' notice of cancellation for a recurring EFT, as opposed to the statutorily required three days. *Miller*, 2015 U.S. Dist. LEXIS 51993, at *8. The district court dismissed this cause of action, holding that "under the plain terms of the statute and Regulation E, § 1693e(a) applies only to financial institutions." *Id.*

In *Baldukas*, the plaintiff made a similar argument, specifically relying on 15 U.S.C. § 1693m, which "authorizes litigation against 'any person' who fails to comply with 'any

provision' of the EFTA." *Baldukas*, 2012 U.S. Dist. LEXIS 186777, 2012 WL 7681733, at *4. The district court found plaintiff's reliance on Section 1693m was misplaced. "Plaintiff … overlooked the introductory phrase of § 1693m, which provides for liability of 'any person' except as otherwise provided by this section and section 1693h of this title." *Id*. (emphasis added). The court thereafter noted that "Section 1693m is not a basis of liability … but simply an enforcement mechanism for other statutory provisions," and that while "Section 1693h(a)(3) specifies that a 'financial institution' shall be liable for its failure to stop payment of a preauthorized transfer from a consumer's account when instructed to do so," "no similar liability exists for any other 'person' under § 1693." *Id*.; *see also Nordberg v. Trilegiant Corp*., 445 F.Supp.2d 1082, 1094 (N.D. Cal. 2006).

The gravamen of Plaintiff's Complaint is that after he cancelled his son's membership, the Union continued to charge him a monthly fee. Therefore, if the April 2019 charges are considered part of an ongoing preauthorized transaction — dating back to when Plaintiff initially signed his son up for the membership — Plaintiff is actually claiming that the Union failed to abide by the stop payment provision of Section 1693e(a), not the preauthorized EFT provision. As the Complaint contains no allegation that the Union failed to obtain proper written authorization for the ongoing transaction when Plaintiff first signed up his son for associate membership, or that the Union failed to provide Plaintiff with a copy of such authorization, Plaintiff is foreclosed from asserting liability under preauthorized EFT provision of Section 1693e(a), as the Union already met the requirements of that provision for the specific ongoing transaction at issue. While Plaintiff might have alleged sufficient facts to demonstrate liability under the stop payment provision of Section 1693e(a) against a financial institution, the Union is not a financial institution, and that provision does not apply to "all persons" or "any persons." Accordingly, Plaintiff's claim should be dismissed because he has failed to state a cognizable legal claim.

///

///

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

13

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO

## V. CONCLUSION

For the foregoing reasons, the Union respectfully requests that the Court dismiss Plaintiff's lawsuit under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  April 2, 2020

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By:  */s/ Bruce A. Harland*
     BRUCE A. HARLAND

Attorneys for Defendant SEIU UNITED HEALTHCARE WORKERS-WEST

148949\1077204

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

14

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 1:20-CV-00385-AWI-SKO