# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG PRICE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEIU UNITED HEALTHCARE WORKERS WEST and DOES 1-10,<br><br>Defendant. | CASE: 1:20-cv-00385-AWI-SKO<br><br>**ORDER DENYING DEFENDANT's MOTION TO DISMISS**<br><br>(Doc. No. 9) |

On January 14, 2020, Greg Price filed an action in Fresno County Court alleging claims under the Electronic Funds Transfer Act ("EFTA"), the California Automatic Purchase Renewal Statute ("CAPRS") and California's Unfair Competition Law ("UCL") against his former employer SEIU United Healthcare Workers West (the "Union) in connection with electronic funds transfers ("ETF") that were allegedly unauthorized. Doc. No. 1-1. That action was removed to this Court on March 13, 2020. Doc. No. 1. The Union has brought a motion to dismiss all of Price's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. Doc. No. 9. The motion has been fully briefed and the Court has deemed it suitable for decision without hearing pursuant to Local Rule 230(g). For the reasons set forth below, the motion will be denied in its entirety.

## **SUMMARY OF ALLEGATIONS**

Price was formerly employed by the Union in Fresno. Doc. No. 7 ¶ 10. During that period of employment, he "registered his son and [] daughter as associate members with [the Union]." Id.

¶ 12. Price was billed $20 per month for each membership Id. ¶ 13. Plaintiff registered for automatic withdrawals from his bank account to pay for the memberships, and the Union made the withdrawals from his bank account through its "Pledge Up platform." Id. ¶ 14.

In or around September 2018, Price ended his employment with the Union, at which time "he requested [the Union] cancel all of his memberships and automatic withdrawals, including his son's and daughter's subscriptions." Doc. No. 7 ¶ 15. The withdrawals stopped for several months, but on April 15, 2019, the Union made two $20 withdrawals labeled "PLEDGEUP DUES & PAC" from Price's bank account" (the "April 15, 2019 EFTs"). Id. ¶¶ 17-21. These withdrawals, totaling $40, were made without notice or authorization and caused Plaintiff to incur significant overdraft fees. Id. ¶¶ 19-22.

Based on the foregoing allegations, Price brings claims, individually and on behalf of all others similarly situated, for violations of the EFTA, 15 U.S.C. 1693, *et seq.*, and related regulations; the CAPRS, Cal. Bus. & Prof. Code § 17600, *et seq.*, and related regulations; and California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq.* Doc. No. 7 ¶¶ 46-76.

## **DEFENDANT'S MOTION TO DISMISS**

The Union argues that Price's EFTA claim can only be brought against a financial institution. Further, the Union argues that the First Amended Complaint ("FAC") is so devoid of factual allegations that Price has not stated any claim. Price, for his part, argues that the Union is liable under the EFTA as a third party payee because it initiated "preauthorized" EFTs from his account after Price had revoked its authority to do so. Price further argues that he has alleged sufficient facts to state his claims.

## **LEGAL FRAMEWORK**

Under Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica,

2

Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.

In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, and matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). "In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (citation and internal quotation marks omitted).

## DISCUSSION

### I.     EFTA Claim

The EFTA "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," with the primary objective of protecting the rights of consumers. 15 U.S.C. § 1693(b). The statute covers a

3

wide range of electronic money transfers—from ATM withdrawals by consumers to preauthorized debits by third parties—and subjects them to various procedural requirements designed to protect consumers from transactions made in error or without their consent. See id. §§ 1693a(7), 1693b–1693f. Further, it provides a private right of action for violations of such requirements. Id. § 1693m(a).

Price brings a claim for violations of § 1693e(a), pertaining to "preauthorized" EFTs. Doc. No. 7 ¶ 2. Section 1693a(10) defines a "preauthorized" EFT as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). Section 1693e(a) states:

> A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

15 U.S.C. § 1693e(a).

The FAC alleges that each of the April 15, 2019 EFTs was in the amount of $20 and labeled "PLEDGEUP DUES & PAC," in keeping with EFTs that Price authorized in advance to occur monthly for his children's membership dues while he was in the Union's employ. Doc. No. 7 ¶ 17. Price has, therefore, set forth allegations sufficient to support a reasonable inference that the April 15, 2019 EFTs were "preauthorized"—that is, initiated pursuant to authorization provided in advance—for purposes of the EFTA. See 15 U.S.C. § 1693a(10). Further, Price alleges that the Union initiated the April 15, 2019 EFTs after he had instructed the Union to cancel the memberships and withdrawals. Doc. No. 7 ¶ 15. This scenario—in which a third party uses account access furnished by a consumer for ongoing withdrawals to continue debiting an account after authorization to do so has been revoked—clearly implicates § 1693e(a)'s purpose of protecting "consumers who arrange for regular payments (such as insurance premiums or utility bills) to be deducted automatically from their bank accounts." See Okocha v. HSBC Bank USA, N.A, 2010 WL 5122614, at *2 (S.D.N.Y. Dec. 14, 2010) (citing S. Rep. 95-915 at 15 (1978)). And

courts consistently find that the EFTA provides a private cause of action where, as here, third parties initiate EFTs without the requisite authority, whether because a given EFT is outside the scope of whatever authorization is in place or because authorization to initiate transfers has been rescinded all together. See, e.g., Stock v. Firstmark Servs., 2018 WL 8193373, at *4 (C.D. Cal. Dec. 12, 2018) (finding plaintiff had stated "a valid claim under the EFTA for a violation of section 1693a(e)" on allegations that defendant initiated an EFT after plaintiff had withdrawn authorization to do so); Starks v. Geico Indem. Co., 2015 WL 12942282, at *4 (C.D. Cal. Nov. 10, 2015) (finding plaintiffs had stated EFTA claim for violation of § 1693e(a) based on allegations that charges associated with adding their son to an insurance policy "fell outside the scope" of advance authorization); see also, Herman v. SeaWorld Parks & Entm't, Inc., 2017 WL 1376169, at *7 (M.D. Fla. Apr. 17, 2017) (granting summary judgment in plaintiffs' favor for violation of § 1693e(a) on showing that defendant continued to collect monthly payments by means of EFT after theme park passes had been paid off, in violation of written contract); O'Brien v. Landers, 2011 WL 221865, at *2 (N.D. Ill. Jan. 24, 2011) (finding plaintiff had stated an EFTA claim for violation of 15 U.S.C. § 1693e(a) because "one-time $35 charge" fell "outside the scope of plaintiff's preauthorization" to debit plaintiff's account for periodic gym dues); Wendorf v. Landers, 755 F. Supp. 2d 972, 976-77 (N.D. Ill. 2010) (plaintiff stated an EFTA claim for violation of 15. U.S.C. § 1693e(a) with allegations that one-time service charge imposed by defendant gym "fell outside the scope of plaintiff's preauthorization" for the monthly payment of gym dues).

The Union argues that the April 15, 2019 EFTs where "unauthorized" under § 1693a(12)(A)—not "preauthorized" under § 1693a(10) and §1693e(a)—and that consequently Price only has a cause of action against his financial institution. Doc. No. 9-1, Part V.A.1. Specifically, the Union argues that the April 15, 2019 EFTs were "unauthorized" under § 1693a(12)(A) because Price alleges that he notified his financial institution that the Union was no longer authorized to draw on his account for his children's membership dues before the April 15, 2019 EFTs took place.  Doc. No. 12 at 4:3-11. The FAC, however, states only that Price notified the Union that EFT authorization for membership dues had been cancelled, and there is no basis in

the FAC—or in any of the briefing—to impute to Price's financial institution notice that, as alleged, was only provided to the Union. See Doc. No. 7 ¶¶ 15-16. Moreover, and more fundamentally, a transaction can be both "preauthorized" and "unauthorized," giving consumers a cause of action against a third-party payee that initiates an EFT without authorization, in addition to a cause of action against a financial institution that processes an EFT after receiving timely notice that the EFT is no longer authorized. See Wike v. Vertrue, Inc., 566 F.3d 590, 594-95 (6th Cir. 2009) (stating that "a payee that arranges a covered preauthorized transfer may face liability under § 1693e(a) whether or not the transfer is 'unauthorized' " and that "[w]hether [] monthly withdrawals from [a consumer's] account were 'unauthorized' [] may determine whether she can force her bank to reimburse her, but it has nothing to do with whether [the third party who initiated the transfer] violated § 1693e(a)"); see also, Starks, 2015 WL 12942282, at *5 (adopting the Sixth Circuit's finding in *Wike* that "whether a transfer is 'unauthorized' under § 1693a(12) … has no bearing on a determination of whether there was a violation of § 1693e(a)"); Herman, 2017 WL 1376169 at *6–7 (same).

      The Union's alternative argument that Price has nothing more than a claim against his financial institution under the "stop payment" provision in § 1693e(a) fails for the same reasons. See Doc. No. 9-1, Part V.A.2. As noted above, Price never alleges that he notified his financial institution that he had revoked the Union's authority to initiate EFTs for membership dues, and even if he had provided such notice (and alleged as much), there is no reason in the briefing—or otherwise known to the Court—why an EFTA violation on the part of a financial institution in failing to stop payment on a transfer would negate an EFTA violation on the part of a third-party payee for wrongfully initiating the transfer in the first place. Both the financial institution and the third-party payee could be liable. Cf. Wike, 566 F.3d at 594-95.

      In short, there is no merit to the Union's arguments that Price cannot sue the Union because it is not a financial institution. As alleged, the April 15, 2019 EFTs were "preauthorized" under § 1693a(10) and § 1693e(a), and, even if they were also "unauthorized" under § 1693a(12) (which does not appear to be the case), Price can still bring a claim against the Union under the EFTA for initiating them without authorization. The Court therefore finds that Price is not barred

6

from bringing an EFTA claim against the Union on the grounds that the Union is not a financial institution.

**B.      Sufficiency of Factual Allegations**

The Union also argues that the FAC is too lacking in creditable allegations to state any claim. Specifically, the Union asserts that Price's allegation that the Union billed him after he canceled his children's memberships is "a conclusory allegation without specific supporting facts." Doc. No. 17 at 16:21-24. The Union also asserts that the phrase "all of his memberships" in Price's allegation that he "requested [the Union] cancel all of his memberships and automatic withdrawals, including his son and daughter's subscriptions" is "vague, non-specific, and confusing" because it is "unclear whether [Price] is referring to only his own membership, memberships of other community members he recruited, or the dues payments ('subscriptions') that were attached to his bank account." Id. at 17:7-13. Finally, the Union asserts that Price's allegations that the April 15, 2019 EFTs were labeled "PLEDGEUP DUES & PAC" is insufficient to show that they relate to his children's memberships, as opposed to "the subscriptions of other community members that [Price] recruited." Id. at 17:14-18:3.

This line of argument is without merit. The FAC contains the following factual allegations: Price provided the Union with permission to withdraw monthly payments from his account for his children's membership dues while he was employed by the Union; when he left the Union's employ, Price cancelled the withdrawals; approximately seven months after Price instructed the Union to stop debiting his account, the Union initiated debits to his account in the same $20 increments and with the same transaction labels as the debits used for autopayment of his children's membership while Price was still employed by the Union. The Union presents no argument as to the pleading standard applicable to Price's claims or the elements of Price's CAPRS and UCL claims, so the Court does not address those issue here. On their faces, however, none of the foregoing allegations are conclusory, lacking in fact or otherwise deficient. To the contrary, Price has set forth a "short and plain" statement of facts that is perfectly plausible and easy to understand. See Fed.R.Civ.P. 8(a)(2); see also, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (stating that a Rule 8(a)(2) pleading only requires "enough facts to state a claim to

7

relief that is plausible on its face"). The Court therefore declines to dismiss any of Price's claims based on the Union's generalized argument that the allegations in the FAC are categorically insufficient.

## CONCLUSION

For the foregoing reasons, the Court will deny the Union's motion to dismiss in its entirety.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss (Doc. No. 9) is DENIED in its entirety; and
2. This case is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: __February 9, 2021__

SENIOR DISTRICT JUDGE